UNITED STATES DISTRICT

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA   2009 SEP -3  A 9: 01
CHARLESTON DIVISION

| | | |
|---|---|---|
| Tiffany Spann-Wilder, | ) | C. A. No. 2:08-0156-MBS-RSC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| -versus- | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| City of North Charleston, | ) | |
| | ) | |
| Defendant. | ) | |

This action alleging employment discrimination based on
gender and race in violation of Title VII of the Civil Rights Act
of 1991, 42 U.S.C. §§ 2000e *et seq.*; retaliation for protected
activity in violation of Title VII; violation of the Equal Pay
Act, 29 U.S.C. §§ 201 *et seq.*; intentional discrimination under
color of state law in violation of 42 U.S.C. §§ 1981 and 1983;
and violation of the South Carolina Payment of Wages Act, S.C.
Code Ann. § 41-10-10, is before the undersigned United States
Magistrate Judge for a report and recommendation on the
defendant's motion for summary judgment filed on February 9,
2009, and the plaintiff's motion for partial summary judgment
filed the same day.  28 U.S.C. § 636(b).

Plaintiff Tiffany Spann-Wilder brought this action against
Defendant City of North Charleston on January 16, 2008.
Plaintiff, who is a black female, alleges that she served as a
part time municipal judge for the City of North Charleston

1

beginning on October 26, 2001. Plaintiff asserts that she was paid a lesser salary than a white male who served in a similar judicial position. Plaintiff alleges that she requested an increase in her salary to be commensurate with that received by the white male municipal judge. According to Plaintiff, Defendant subsequently refused to reappoint her to the municipal judge position in retaliation for her complaints regarding her salary and because of race and gender based animus. Plaintiff seeks equitable relief and damages.

In its motion the defendant asserted that (1) Plaintiff was an independent contractor, rather than an employee of Defendant, and thus all of her employment discrimination claims fail; (2) all her claims are otherwise without merit. Plaintiff's motion for partial summary judgment seeks a ruling that at all times relevant to the complaint she was an employee of the defendant rather than an independent contractor working for the defendant.

Plaintiff filed an opposition to the defendant's motion on March 9, 2009. Among other things, Plaintiff asserted that Defendant terminated her in violation of her rights under the First Amendment because she made comments to a newspaper critical of the City police following an incident at her private law office in April 2004, and she sought to amend her complaint to the extent necessary to clarify her First Amendment claim under §§ 1981 and 1983. Plaintiff filed a motion to amend her

2

complaint on March 27, 2009, which the Honorable Margaret Seymour, United States District Judge denied on August 14, 2009.

The parties also filed oppositions to the respective motions on March 9, 2009, and the defendant filed a reply on March 18, 2009. Hence it appears consideration of the motions is appropriate.

## SUMMARY JUDGMENT STANDARD

To grant a motion for summary judgment, this court first must find that "there is no genuine issue as to any material fact." Fed.R.Civ.P. 56(c). The judge is not to weigh the evidence, but rather to determine if there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). If no material factual disputes remain, then summary judgment should be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which the party bears the burden of proof at trial. Celotex Corp. v. Cattrett, 477 U.S. 317 (1986). All evidence should be viewed in the light most favorable to the non-moving party. Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-23 (4th Cir. 1990). Once a motion for summary judgment is properly made and supported, the opposing party has the burden of showing that a genuine dispute exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). "[W]here the record taken as a whole could not lead a rational

trier of fact to find for the non-moving party, disposition by summary judgment is appropriate." <u>Teamsters Joint Council No. 83 v. CenTra, Inc.</u>, 947 F.2d 115, 119 (4th Cir. 1991); <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248-49 (1986). Unsupported speculation is not enough to withstand a motion for summary judgment. <u>Ash v. United Parcel Service, Inc.</u>, 800 F.2d 409, 411-12 (4th Cir. 1986). Indeed, the court should draw reasonable inferences on behalf of the non-moving party, but it must not slip into "sheer speculation." The court may not move beyond inference and into the realm of mere conjecture. <u>Lovelace v. Sherwin-Williams Co.</u>, 681 F.2d 230, 242 (4th Cir.1982).

## DISCUSSION

A review of the record and relevant case law reveals that the plaintiff's motion for partial summary judgment should be denied and the defendant's motion for summary judgment should be granted as to all causes of action save that brought pursuant to 42 U.S.C. § 1983.

Both motions submit that the court should decide as a matter of law the threshold issue of whether the plaintiff was an employee or an independent contractor for purpose of applying the laws the plaintiff asserts were violated during the time relevant to the action.

## APPLICABLE LAW AND DISCUSSION

The Acts providing remedies for employment discrimination or wrongful employment actions are "available only to employees seeking redress for alleged unlawful practices of their employers." See, e.g., Walters v. Orangeburg County, 2000 WL 33417008 (D.S.C. 2000), aff'd, 2001 WL 867192 (4th Cir. 2001)(citing, Kern v. Rochester, 93 F.3d th 38 (2nd Cir. 1996)). Thus, the threshold issue is whether there was an employment relationship between the plaintiff and the defendant. For the purposes of federal claims, a plaintiff's status as an employee generally is a question of federal, rather than state law. Walters (citing, Curl v. Reavis, 740 F.2d 1323, 1327 (4th Cir. 1984)).

In Community for Creative Non-Violence v. Reid, 490 U.S. 730, 751-52 (1989), the Court set forth the applicable factors to apply in determining whether a person is an employee or an independent contractor. The Fourth Circuit Court of Appeals applied the Reid factors in Cilecek v. Inova Health System Services, 115 F.3d 256, 261 (4th Cir. 1997) and added that the involved parties' belief about the nature of the employment relationship is significant. In particular, the court in Cilecek relied upon the way the parties treated benefits, taxes, and the way each represented the relationship to third parties in

examining the parties' belief about their relationship. Id. at 262-63.

Subsequently, in Farlow v. Wachovia Bank of North Carolina, N.A., 259 F.3d 309 (4th Cir. 2001), the Fourth Circuit again applied the factors relied upon in Cilecek. When applied to the facts of this case, those factors appear to indicate that Spann-Wilder was an independent contractor performing work for the City, not an employee of the City.

First, Spann-Wilder represented to third parties that she was an independent contractor. As noted in Cilecek, a "relationship can be confirmed uniformly by the parties in the way they treated benefits and taxes and the way they represented the relationship to third parties." Cilecek at 262-63. Similar to the relationship at issue in Cilecek, the relationship between Spann-Wilder and the City is "confirmed uniformly" by the following: (1) a lack of benefits provided to Spann-Wilder by the City; (2) the way both Spann-Wilder and the City treated her compensation in regard to taxes; and, (3) Spann-Wilder's representation of her relationship with the City to the Internal Revenue Service (IRS), a third party.

Here, the City did not provide any fringe benefits to Spann-Wilder, such as health insurance, dental insurance, life insurance, vacation, sick leave or retirement contributions. Although the City offered to allow Spann-Wilder to participate in

6

its health insurance plan in January 2004, she declined to participate because the City was going to report its cost to provide the health insurance coverage to her as income on her IRS 1099 MISC form under "nonemployee compensation" along with all other compensation paid to her by the City.

Additionally, the City paid all compensation to Spann-Wilder without deducting federal or state income taxes, paying payroll taxes, or making a deduction for the Federal Insurance Compensation Act (FICA). Moreover, Spann-Wilder neither requested that she receive her compensation in any other fashion nor inquired why the City did not make those deductions from her compensation, deductions typically made from the payroll check of an employee.

In fact, in each year she received compensation from the City, Spann-Wilder reported the compensation on her federal income tax return on Schedule C "Profit or Loss From Business (Sole Proprietorship)" as profit from her private business and she paid self-employment tax on the compensation. Spann-Wilder enjoyed several tax advantages by representing to the IRS that she was not a City employee; she was able to offset the compensation with "business expenses," resulting in only a portion of her City earnings being taxable or subject to

self-employment tax.[1]

The Farlow court reasoned that financial factors, such as the factors noted above, are significant in determining whether a person is an employee or independent contractor. Farlow at 315. "The failure of an employer tc extend employment benefits or to pay any payroll taxes is 'highly indicative' that the employee is an independent contractor." Id., citing, Aymes v. Bonelli, 980 F.2d 857, 862 (2d Cir. 1992). "A party's tax and benefit treatment can be 'virtual admissions' of the party's status." Id., quoting, Aymes at 862. The holding in Farlow, and its reliance upon Aymes, when applied to Spann-Wilder's relationship with the City, supports the conclusion that she was an independent contractor, not a City employee.

Likewise, the Farlow court found important that the plaintiff, as here, did not work exclusively for the defendant during the period of time at issue. Id. Specifically, the Farlow court noted that the plaintiff maintained an active private law practice in which she represented numerous clients on matters unrelated to her work for the defendant. Id. Moreover,

_____

[1] For example, in 2005, along with her compensation from the City, Spann-Wilder reported on Schedule C an additional $1,375.00 which was a portion of a fee in a case she had with another lawyer, for a total "business profit" of $13,375.00. Pl. dep. p. 323. She then took $7,498.00 in business expenses on Schedule C that she used to offset her business income, including her compensation from the City. As a result, at the most, only $3,877.00 of the $10,000.00 paid to her by the City was taxable income or subject to self-employment tax.

8

the plaintiff in Farlow continued to accept new clients in her private practice while working for the defendant. Id. Spann-Wilder did the same thing maintaining her private law practice while working as a municipal judge for the City. (Def. ex. X, request 1).

The Farlow court also stated that the "touchstone inquiry enunciated in Reid addresses the degree of the 'hiring party's right to control the manner and means by which the product is accomplished.'" Farlow at 313, quoting, Reid at 751. "The degree of control considers the degree of control of the professional services rendered rather than peripheral, administrative details which were incidental to the rendering of ... services." Id., quoting, Robb v. United States, 80 F.3d 884, 889 (4th Cir. 1996) (internal quotations omitted).

Here, the evidence is that the City never told Spann-Wilder how to hold her court or how to rule on any matter of fact or of law. Spann-Wilder was allowed to perform her judicial duties, i.e., "professional services," without interference from the City. Although the City provided peripheral, administrative services, such as the Clerk of Court and bailiffs, these amount to no more than services incidental to her service as a municipal judge for the City. Unlike the plaintiff in Farlow, there is no evidence that Spann-Wilder was required to attend staff meetings on a regular basis or comply with a particular dress code, each

9

being a factor that the Farlow court stated might suggest a person is an employee. Id. at 314. Therefore, the City's lack of control over Spann-Wilder's performance of her professional services as a municipal judge is indicative of an independent contractor relationship with the City.

Again, Spann-Wilder's own conduct indicates that she believed that she was an independent contractor. In addition to the tax treatment of her earnings, she did not ask whether there was a grievance procedure for terminated City employees. Pl. dep. at 280-281. Spann-Wilder also never accrued leave, including sick leave, and never asked any City representative about accrued leave time or how much leave she had accrued. Pl. dep. at 330. It does not appear that Spann-Wilder even knew the terms of the City's paid leave program. Id. When she could not perform work during the weeks surrounding the adoption of her child, the City continued to pay the contracted fee.

As noted by the Farlow court, "the parties' beliefs regarding the nature of the employment relationship are significant." Id. at 313. Most telling is Spann-Wilder testimony that she knew that an "employee" cannot take a "business deduction" for transportation expenses, such as gas, to travel to their office from their home. Pl. dep. at 321. Nonetheless, she continually deducted transportation costs as a "business expense" on her federal income tax returns in 2002,

2003, 2004 and 2005.  Def. ex. W, Schedule C tax years 2002-2005.
Spann-Wilder's repeated representations to the IRS, combined with
her admissions regarding transportation expenses, are evidence
that she knew she was not a City employee.  Spann-Wilder's noted
actions, combined with her admitted lack of inquiry, indicate
that she knew that she was an independent contractor during her
two terms as a municipal judge.

In her motion, Spann-Wilder raised three additional
contentions that she was a City employee:  1) the City "admits
that Municipal Judges are employees"; 2) the City was required by
statute to classify Spann-Wilder as an employee; and, 3)
application of common law principals to the facts establishes
that Spann-Wilder was a City employee.  Additionally,
Spann-Wilder contends that even if she was an independent
contractor in regard to her civil rights claims, she,
nevertheless, was not an independent contractor in regard to her
Equal Pay Act claim.  These grounds will be discussed in
seriatim.

First, Spann-Wilder argued that the City "admits that
Municipal Judges are employees."  Spann-Wilder relies upon a
letter from Steven R. Van Camp, managing legal counsel for the
S.C. Retirement Systems, dated June 10, 2005, to J. Brady Hair,
City Attorney for the defendant which contains the following
statement:  "Given that municipal judges exercise a portion of

the sovereign power of the state, they are clearly officers of the state and cannot be independent contractors with the City. Accordingly, all municipal judges appointed by council . . . should be classified as employees and must participate in SCRS [the Retirement System] as a condition of that employment."

In his January 23, 2006, response to Van Camp, Hair replies that "I believe your analysis is correct, and I have recommended to our City Administrator that the City should allow certain appointed positions, including our Municipal Judges, to participate in the program." According to Hair, his letter was simply a response to a "very narrow determination by the State Budget and Control Board" that municipal judges exercise sovereign power and, as a result, are entitled to participate in the Retirement System. In particular, Hair states that he did not "surmise" anything from his exchange of letters with Van Camp other than that municipal judges can participate in the Retirement System. Hair also wrote that, "I have recommended to our City Administrator that the City should allow certain appointed positions, including our Municipal Judges to participate in the program." Hair's letter did not include a recommendation that the judges should all be classified as employees instead of independent contractors; the letter does not stand for the proposition that "the City admits that Municipal Judges are employees."

12

Even if Plaintiff was correct, the Hair recommendation came after Spann-Wilder was not reappointed and had quit performing services for the City.  There is no indication that Hair's recommendation was for retroactive participation in the retirement program.  In short Hair's letter did not make Spann-Wilder an employee for the City for the years she served as a part time judge.

Second, Spann-Wilder argued that the City was required by statute to classify Spann-Wilder as an employee.  She argued that "[t]he South Carolina legislature states that municipal judges are classified as employees, not contractors.  None of the language in the statute allows a municipality to contract with a municipal judge."  Pl. memo. p. 6.  In support of this assertion, Spann-Wilder relies upon the general language contained in S.C. Code Ann. § 14-25-25[2] to conclude that the City was required, by

---

[2] Section 14-25-25 reads:
A municipal judge shall not be required to be a resident of the municipality by whom he is employed. A municipality may contract with any other municipality in the county or with the county governing body to employ the municipal judge of the other municipality or a magistrate to preside over its court.

In case of a vacancy in the office of municipal judge, a successor shall be appointed in the manner of original appointment for the unexpired term. In case of the temporary absence, sickness, or disability of a municipal judge, the court shall be held by a judge of another municipality or by a practicing attorney or some other person who has received training or experience in municipal court procedure, who shall be designated by the mayor and take the prescribed oath of office before entering upon his duties.

law, to classify Spann-Wilder as an employee. It appears that she is incorrect.

S.C. Code Ann. § 14-25-10 et seq. does not contain the term "employee" except in relation to municipal clerks of court. However, it does contain a single use of the terms "employed" and "employ" when addressing municipal judges. From these confined uses of the terms "employed" and "employ," Spann-Wilder concludes that under the "plain meaning" of the statute, municipal judges are prohibited from being independent contractors for a municipality, such as the City. Spann-Wilder's assertions about the Statute do not reference any reported appellate decision or evidence of legislative intent which addresses the meaning of the terms "employed" or "employ," as these terms appear in the statute.

It is well-established law in South Carolina that "[w]here the legislature elects not to define the term in the statute, courts will interpret the term in accord with its usual and customary meaning." Camden v. Brassell, 326 S.C. 556, 560, 486 S.E.2d 492, 494 (Ct. App.1997), citing, Adoptive Parents v. Biological Parents, 315 S.C. 535, 446 S.E.2d 404 (1994).

Black's Law Dictionary, 5th Ed., defines "employ" as follows:

> To engage in one's service; to hire; to use as an agent or substitute in transacting business; to commission and intrust with the performance of certain acts or functions or with management of

14

one's affairs; and, when used in respect to a servant or hired laborer, the term is equivalent to hiring, which implies a request and a contract for a compensation. To make use of, to keep at work, to entrust with some duty.

Similarly, the Merriam-Webster Online Dictionary provides the following definition: "to make use of (someone or something inactive); to use (as time) advantageously; to use or engage the services of; to provide with a job that pays wages or a salary;

to devote to or direct toward a particular activity or person."
It appears that the South Carolina General Assembly, by its use
of the word "employ" in the statute, did not intend to prohibit
the City from maintaining an independent contractor relationship
with Spann-Wilder. Further, the South Carolina Attorney General
previously concluded that the term "employ," as used in an
unrelated statutory provision, means "to make use of, to keep at
work, or to entrust with some duty." 1984 S.C. Op. Atty. Gen.
292. In reaching this conclusion, the South Carolina Attorney
General further concluded that "the term 'employ' has been used
to 'emphasize the idea of service rendered or to be rendered. The
meaning of the word is not limited to services which are rendered
for wages.'" Id. Plaintiff's interpretation of these words
simply is not the ususal and customary meaning of the words and
does not control her work status with the City.

Spann-Wilder also argued that "S.C. statute forbids a
municipal judge to represent clients in the municipal court in
which they preside." That is correct and the prohibition is in
line with the South Carolina Rules of Professional Conduct as
well. Spann-Wilder asserts that the City "extended that
restriction when they instructed her that she could not represent
any clients with adverse interests to" the City, including a City
sanitation worker who she admittedly continued to represent after
being appointed and beginning her service as a City municipal

16

judge. In that regard, it was not until after she sought and received an opinion from the South Carolina Advisory Committee on Standards of Judicial Conduct that she ceased personally representing the City sanitation worker; however, another attorney in her law firm simply substituted to continue the representation. Pl. dep. p. 123.

It is important to note that in her letter to the Advisory Committee, Spann-Wilder clearly asserted that she did not believe there was a conflict of interest. Pl. ex. C. Spann-Wilder relies in part on the City's request regarding her representation of clients whose interests were adverse to the City to show that she was a City employee. However, if she believed that she was a City employee then how could she have believed under any circumstance that she could represent another City employee in a matter brought against her own employer. <u>See</u>, Pl.'s Dep., p. 115, l. 21 - p. 130, l. 18. Rather, it appears that she could only have believed that she was an independent contractor rather than the City's employee, which is consistent with her representations to IRS. Likewise, if she believed she was a City employee, it appears she could not have concluded that she could allow another lawyer in her own law firm to represent one of the firm's clients against her employer, the City, without obtaining the consent of both the City and the client. Her arguments in this regard an unpersuasive.

17

Third, Spann-Wilder claims that the City provided her with paid leave while she was a municipal judge which she believes means that she was a City employee. However she deposed:

> "Q. Did you accrue leave on a monthly basis while you were working for the city?
>
> A. I don't know that - - I don't think that there was some accrual of leave or anything like that, no." Pl. dep. p. 329.
>
> "Q. Do you know if you accrued any sick leave while you were working for the city?
>
> A. Not that I'm aware of." Pl. dep. p. 330.

Spann-Wilder's sworn testimony contradicts her assertion that the City provided "paid leave" to her.

Additionally, Spann-Wilder argued that even if she was an independent contractor in regard to her civil rights claims, she was still an employee for purposes of her Equal Pay Act claim because the Equal Pay Act contains a broader definition of "employee" than Title VII and other civil rights statutes.

"The definition of an 'employee' for purposes of the FLSA, including the EPA, is broader than the common law definition." Thomas v. Brock, 617 F.Supp. 526, 534 (1985), aff'd, 810 F.2d 448 (4th Cir. 1987). "A central question in determining 'employee' status under the FLSA [EPA] is whether or not the alleged employees are, as a matter of economic reality, dependent upon the business to which they render service." Id., citing, Usery v. Pilgrim, 527 F.2d 1308, 1311 (5th Cir. 1976)(emphasis added).

18

Although the courts have recognized several considerations in regard to determining "economic dependence," none "of these considerations can become the final determinant, nor can the collective answers to all of the inquiries produce a resolution which submerges consideration of the dominant factor - economic dependence." Usery at 1311.[3]

In Thomas, Usery and Lauritzen, the courts determined that the workers were employees and not independent contractors when they had a relationship with their employer that made it virtually impossible for them to pursue other business or income independent of their employer. In contrast, Spann-Wilder maintained a private law practice as her primary source of income throughout the period she worked for the City as a municipal judge; she was not "economically dependent" upon her municipal judge position with the City. Spann-Wilder deposed regarding her position and compensation, "[b]y virtue of being a part-time judge, you have the ability to run a law practice and to do that,

_____

[3] The courts reviewed the following considerations in determining employee status: "(a) control; (b) risk of profit or loss; (c) investment; (d) skills required; (e) permanency of relationship; and (f) integral economic relationship." Thomas at 534. See also, Donovan v. Sureway Cleaners, 656 F.2d 1368 (9th Cir. 1981). However, none of the factors, standing alone, is controlling. "In seeking to determine the economic reality of the nature of the working relationship, courts do not look to a particular isolated factor but to all the circumstances of the work activity. Secretary of Labor v. Lauritzen, 835 F.2d 1529, 1534 (1987). See also, Rutherford Food Corp. v. McComb, 331 U.S. 722 (1947).

19

and so that - - that was essentially gravy and that's gravy I'm missing." Pl. dep. p. 271.

Therefore it appears that Spann-Wilder was not a City employee for purposes of her Title VII, Equal Pay Act, and the South Carolina Payment of Wages Act claims, and those claims should fail for that reason.

42 U.S.C. § 1981

The plaintiff also brought a claim under 42 U.S.C. § 1981 which should be dismissed because there is no private right of action against a public defendant under 42 U.S.C. § 1981. In Jett v. Dallas Independent School Dist., 491 U.S. 701 (1989) the Court held, "the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units ...." Jett at 771. Although other holdings from Jett were abrogated by the Civil Rights Act of 1991, this aspect of the Court's ruling in Jett remains in effect. See, Dennis v. County of Fairfax, 55 F.3d 151, 156, n. 1 (4th Cir. 1995)(As to the ruling that §1983 is the exclusive remedy against a governmental actor for violations of § 1981, "we do not believe this aspect of Jett was affected by the Civil Rights Act of 1991."). As a result it appears that the court should dismiss any claim pursuant to 42 U.S.C. § 1981.

20

## 42 U.S.C. § 1983

Spann-Wilder brought a claim pursuant to 42 U.S.C. § 1983[4] denominated "intentional discrimination under color of state law" and referenced pay inequities, discharge, and deprivationr of her employment opportunities on account of race. However, Spann-Wilder did not cite any constitutional amendment or other federal statute when claiming that the defendant violated § 1983. "Section 1983 itself creates no rights; rather it provides 'a method for vindicating federal rights elsewhere conferred. Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right preserved by another federal law or by the Constitution." Kendall v. City of Chesapeake, Virginia, 174 F.3d 437, 440 (4th Cir. 1999)(citations omitted).

The defendant seeks summary judgment on this cause of action but cannot really address the wholly nonspecific claim. The defendant invites the court to speculate as to the plaintiff's

---

[4] Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of Section 1983, titled a civil action for deprivation of rights reads in relevant portion: the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.
42 U.S.C. § 1983.

21

intentions in regard to this cause of action. Def. Mem in support pg. 61. The court should decline the invitation as summary judgment is not a vehicle used to discern the nature of the claims brought in a lawsuit.

In response to the defendant's memorandum in support of its motion, the plaintiff argued that she had "identified a violation of her constitutional rights in her complaint at ¶35" which paragraph alleged that the defendant retaliated against her because of her complaints about discriminatory practices as a basis for another cause of action, and does not reference § 1983. The plaintiff also argued that the defendant admitted that it knew the basis for the § 1983 cause of action and Plaintiff cited Defendant's memorandum in support of the motion at page 13 for that propositon. A review of page 13 indicates that Spann-Wilder was not reappointed because of comments that she made to the media critical of the police. The cnly thing certain about the nature of her § 1983 claim is that Spann-Wilder was not allowed to amend her complaint to allege a violation of her First Amendment rights when the City did rot reappoint her because of her derogatory remarks to the press about the police. No cite to the defendant's brief clarifies her § 1983 cause of action.

In sum, the plaintiff's pleadirg deficiencies prevent a reasoned analysis of whether summary judgment is appropriate on

the § 1983 cause of action and the defendant's motion for summary judgment[5] should be denied on that basis.

## CONCLUSION

Accordingly, for the aforementioned reasons, it is recommended that Plaintiff's motion for summary judgment be denied and Defendant's motion for summary judgement be granted as to causes of action under Title VII, the Equal Pay Act, the South Carolina Payment of Wages Act and 42 U.S.C. § 1981, and denied as to the cause of action brought pursuant to 42 U.S.C. § 1983.

Respectfully Submitted,

Robert S. Carr
United States Magistrate Judge

Charleston, South Carolina

September 3, 2009

---

[5] It appears the pleading deficiencies should have been the subject of a motion to dismiss under Fed.R.Civ.P. 12(b)(6) and assessed in light of <u>Bell Atlantic Corp. v. Twombly</u>, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) and its progeny. However, that is not the motion presently before the court.