IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Tiffany Spann-Wilder, | ) | |
| | ) | C.A. No. 2:08-0156-MBS |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | **ORDER AND OPINION** |
| City of North Charleston, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Plaintiff Tiffany Spann-Wilder brought this action against Defendant City of North Charleston on January 16, 2008. Plaintiff formerly served as a part-time municipal judge for the City of North Charleston and asserts that she was paid a lesser salary than white males who served in similar judicial positions. According to Plaintiff, Defendant refused to reappoint her to the municipal judge position in retaliation for her complaints regarding her salary. Plaintiff asserts causes of action for race and gender discrimination in violation of Title VII of the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e *et seq*.; retaliation in violation of Title VII; violation of the Equal Pay Act (EPA), 29 U.S.C. §§ 201 *et seq*.; intentional discrimination under color of state law, in violation of 42 U.S.C. §§ 1981 and 1983; and violation of the South Carolina Payment of Wages Act, S.C. Code Ann. § 41-10-10.

On February 9, 2009, Defendant filed a motion for summary judgment. Plaintiff filed a motion for partial summary judgment on the same day. Defendant responded to Plaintiff's motion on March 9, 2009. Plaintiff responded to Defendant's motion on March 9, 2009 and Defendant replied on March 18, 2009. Defendant's motion for summary judgment raised an issue as to Plaintiff's status as an employee or independent contractor, as well as set forth arguments on the

merits of the various causes of action set forth in Plaintiff's complaint. Plaintiff's status as an employee or independent contractor was the sole issue raised in Plaintiff's motion for partial summary judgment.

In accordance with 28 U.S.C. § 636(b) and Local Rule 73.02, D.S.C., the matter was referred to United States Magistrate Judge Robert S. Carr for pretrial handling. On September 3, 2009, the Magistrate Judge issued a Report and Recommendation. The Magistrate Judge noted that the threshold issue is whether Plaintiff is an employee or independent contractor for purposes of applying the laws Plaintiff asserts were violated during her tenure as municipal judge. The Magistrate Judge determined that Plaintiff was an independent contractor. The Magistrate Judge therefore recommended that Plaintiff's motion for partial summary judgment be denied and Defendant's motion for summary judgment be granted as to all causes of action under Title VII, the Equal Pay Act, the South Carolina Payment of Wages Act, and 42 U.S.C. § 1981. The Magistrate Judge further recommended that Defendant's motion for summary judgment be denied as to Plaintiff's cause of action under 42 U.S.C. § 1983 because Plaintiff had not identified a violation of her constitutional rights, and it was not possible to undertake a reasoned analysis of whether summary judgment is appropriate as to this claim. Plaintiff filed objections to the Report and Recommendation on September 21, 2009.

On September 29, 2009, the court denied both parties' motions for summary judgment concluding that Plaintiff was a public officer and therefore could not have been an independent contractor. The court determined that the true threshold issue is whether Plaintiff, as a public officer, also meets the definition of "employee" for purposes of the causes of action set forth in the complaint. The parties were given leave to brief this issue and the court held in abeyance a

determination of the merits until Plaintiff's status as an employee was resolved. On December 10, 2009, both parties filed their responses to the court's order. On January 11, 2010, both parties replied to the opposing party's response. On March 16, 2010, the court held a hearing on Plaintiff's status as an employee for the purposes of the causes of action set forth in the complaint.

## I. FACTS

Plaintiff, a black female, was appointed by the North Charleston City Council as a part-time municipal judge in October 2001. Plaintiff was assigned to the Criminal Domestic Violence Court by Chief Administrative Judge Revalise. Plaintiff was paid a $12,000 salary. Throughout her term, Plaintiff discussed an increase in her pay with Judge Revalise and Ray Anderson ("Anderson"), Special Assistant to the Mayor. Prior to the expiration of Plaintiff's two-year term in October 2003, Mayor Summey ("the Mayor") recommended to the City Council that Plaintiff be appointed to another two-year term. On November 13, 2003, prior to the Council's vote, Plaintiff inquired about an increase in her salary. On November 13, 2003, the Council voted to appoint Plaintiff for another two-year term. Plaintiff accepted the appointment and continued to preside over cases with no increase to her salary.

In December 2003, Plaintiff learned from a newspaper article that another newly-appointed, part-time municipal judge, David Bowers ("Bowers"), who was assigned to night court, was being paid $25,000 and being provided with benefits. In early 2004, Plaintiff was offered the opportunity to participate in the City's health insurance plan, but declined. Soon thereafter, Plaintiff discussed with Anderson, Judge Revalise, and several City Council members her perception that she was being paid less than other municipal judges. Plaintiff was assured that this would be discussed during the next budget cycle. Around the same time, Bowers received a salary increase to $30,000.

3

On April 4, 2004, police officers arrested a person who was at Plaintiff's law firm seeking potential representation from Plaintiff's law partner, Ms. Cotten. Ms. Cotten lodged a complaint against the police department, which resulted in an investigation. As part of this investigation, Plaintiff was interviewed and allegedly made disparaging remarks about police officers.[1] In addition, on April 6, 2004, the Charleston Post and Courier published an article entitled "Attorneys complain of police acts - North Charleston looks into accusations." Plaintiff is quoted in the article as stating: "If a law office is treated this way, I shudder to think what happens to the common man on the street." Plaintiff's comments came to the attention of the Mayor, who believed that Plaintiff's credibility as an impartial judge was damaged because there was a perception in the police department that it could not get a fair decision from her. The Mayor decided at that time that he would likely not recommend Plaintiff's reappointment when her term expired in October 2005.

On October 21, 2004, Plaintiff met with the Mayor and Anderson to discuss an increase in her compensation to be equal with that of Bowers. The Mayor investigated the appropriateness of Plaintiff's pay with Judge Revalise. Subsequently, the City declined to increase Plaintiff's salary. On January 25, 2005, Plaintiff again requested an increase in her salary, stating that her salary should be $25,000 because "[a]s do the men, [she] ha[s] a family and obligations." Entry 70-11 at 2. Subsequent to a review of her salary and number of work hours, Anderson responded that no increase in Plaintiff's pay would be recommended. On September 30, 2005, Plaintiff once again requested an increase in her salary to $25,000. This request was not granted.

In October of 2005, Plaintiff's term expired. Plaintiff was not recommended for

---

[1] Plaintiff stated that "police officers are buttholes." Pl. Dep. at 306:2-11.; Bollinger Dep. at 34:18-36:10; Entry 63, Ex. Q.

4

reappointment. On October 27, 2005, Thad Doughty, an African-American male, was appointed in Plaintiff's place.

II. DISCUSSION

A. **Whether Plaintiff is an Employee Under Title VII and EPA**

As noted herein above, the issue is whether Plaintiff is an "employee" for purposes of Title VII and the EPA. "A plaintiff's status as an employee under Title VII [and the EPA] is a question of federal, rather than of state, law; it is to be ascertained through consideration of the statutory language of the Act, its legislative history, existing federal case law, and the particular circumstances of the case at hand." *Curl v. Reavis*, 740 F.2d 1323, 1327 (4th Cir. 1984). State law is relevant only "insofar as it describes the plaintiff's position, including his [or her] duties and the way he [or she] is hired, supervised and fired." *Id.*

For the purposes of both Title VII and the EPA, an employee is generally defined as an "individual employed by an employer...." 42 U.S.C. § 2000e(f), 29 U.S.C. § 203(e). In adopting this definition, Congress essentially left the term "employee" undefined. *See Cilecek v. Inova Health System Serv.*, 115 F.3d 256, 259 (4th Cir. 1997). The Fourth Circuit has found that when Congress uses the term "employee" in a statute without defining it, the courts will presume that Congress intended to describe "the conventional master-servant relationship as understood by common-law agency doctrine." *Id*. (citing *Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318, 322-23 (1992)).

In *Community for Creative Non-Violence v. Reid*, 490 U.S. 730 (1989), the Supreme Court identified a non-exhaustive list of factors relevant to determining whether an individual is an employee under the common law of agency. *See Mangram v. Gen. Motors Corp.*, 108 F.3d 61, 62-63 (4th Cir. 1997). These factors include: 1) control of hours worked by the individual and

5

administrative details incident to work; 2) source of instrumentalities of individual's work; 3) duration of the relationship between the parties; 4) whether the hiring party has right to assign additional work or to preclude the individual from working at other facilities; 5) method of payment; 6) the individual's role in hiring and paying assistants; 7) whether work is part of the regular business of the hiring party and how it is customarily discharged; 8) provision of employee benefits; 9) tax treatment of income; and 10) the parties' belief as to type of relationship. *See Cilecek*, 115 F.3d at 259 (citing *Reid*, 490 U.S. at 751-52).[2]

In this case, Plaintiff was appointed to a two-year term. Entry 55-1 at 9; Entry 57-1 at 2. Plaintiff was assigned to the Criminal Domestic Violence Court. Revalise Dep. at 46:3-47:13; 85:25-86:3; Pl. Dep. 50:8-51:8. Plaintiff held court on Monday mornings. Pl. Dep. 94:8-20. Defendant determined Plaintiff's caseload and when she worked. Entry 57-1, Ex. A at ¶ 44. However, Plaintiff made independent rulings over which Defendant had no control. Entry 55-1 at 20. Defendant also provided Plaintiff with a courtroom and administrative support. Entry 55-1 at 20; Entry 57-1 at 9. Plaintiff was not required to attend staff meetings on a regular basis and did not have to comply with a dress code. Entry 55-1 at 20. Plaintiff was paid a $12,000 annual salary. Revalise Dep. at 46:3-47:13; Pl. Dep. 52:11-18. Plaintiff participated in the state retirement system and was provided with life insurance, but was not provided with any other fringe benefits outside of the opportunity to receive health benefits. Entry 55-1 at 17; Entry 57-1 at 13,14; Entry 57-4; 57-11; Entry 114 at 3. The City did not deduct taxes from Plaintiff's salary and instead treated Plaintiff

---

[2] Although *Reid* addressed the distinction between an employee and an independent contractor, the court finds these factors instructive in determining whether Plaintiff, as a public official is an employee because the factors address the "degree of control exercised by the hiring party." *Cilecek*, 115 F.3d at 260; *see Sanders v. Belue*, 58 S.E. 762, 763 (S.C. 1907) (Stating that a public officer is one "who is charged by law with duties involving an exercise of some part of the sovereign power. . . .").

as an independent contractor, providing her with a 1099 tax form for the purpose of filing her income taxes. Entry 55-1 at 37; Entry 57-1 at 15.

Utilizing the *Reid* test, the court finds that Plaintiff meets the definition of employee for the purposes of Title VII and the EPA because: 1) Defendant controlled the number of hours worked by Plaintiff and the administrative details incident to her work; 2) Defendant was the source of instrumentalities of Plaintiff's work; 3) Defendant determined whether to reappoint Plaintiff after her two-year statutory term expired; 4) Defendant had the right to assign additional work to Plaintiff; 5) Plaintiff received a salary as opposed to being paid based upon the completion of a specific job, *see Holt v. Winpisinger*, 811 F.2d 1532, 1541 (C.A.D.C. 1987)(noting the relevance of receiving a salary as opposed to pay based upon the completion of a specific job); 6) Plaintiff carried out an essential function of the municipality; and 7) Plaintiff participated in the City's retirement program and had the option of receiving health benefits. Defendant argues that Plaintiff's tax filings based on the 1099 tax form provided by Defendant should be construed as an admission on the part of Plaintiff that she was not an employee. However, Defendant's tax treatment of Plaintiff was solely within Defendant's control and therefore cannot constitute an admission by Plaintiff of her status. Although some factors may mitigate against a finding of an employment relationship,[3] the court concludes that, on balance, the factors indicate that Plaintiff was an employee of Defendant.

**B.  Whether Plaintiff is an Employee Exempted from Title VII and EPA Protection**

Both Title VII and the EPA provide exemptions with regard to the coverage of the statutes. The statutes exempt from coverage individuals who: 1) hold a public elective office of that State,

---

[3]  For example: 1) Plaintiff did not receive full benefits; 2) the duties and powers of municipal judges were established by statute, not by the City; 3) the City did not control Plaintiff's judicial decisions; and 4) Plaintiff was not required to attend regular staff meetings.

7

political subdivision, or agency; 2) are selected by the holder of such an office to be a member of his or her personal staff; 3) are appointed by such an officeholder to serve on a policymaking level; or 4) are immediate advisers to such an officeholder with respect to the constitutional or legal powers of his or her office. *See* 42 U.S.C. § 2000e(f), 29 U.S.C. § 203(e).[4]

The only exemption at issue is whether Plaintiff falls within the policy making exemption because Plaintiff, as an appointed municipal judge, did not hold a public elective office, was not a member of the personal staff of an elected official and was not an immediate advisor to an elected official. Plaintiff contends that she is not subject to the policy making exemption because this exemption was intended to be construed narrowly and Plaintiff's role as a municipal judge did not involve policy-making. The court disagrees. In *Gregory v. Ashcroft*, 501 U.S. 452 (1991), the Supreme Court determined that although a Missouri state judge was an employee, he likely served on a policy-making level and therefore was exempted for the purposes of protection under the ADEA. 501 U.S. at 470. This decision was made in the context of a Missouri state constitutional provision creating a mandatory retirement age for state judges. *Id.* at 460. The Court reasoned that because states have a sovereign right to establish qualifications for state judges, the application of the ADEA to state judges created significant federalism concerns. *Id.* at 460, 462. Therefore, the Court held that the ADEA would not be interpreted to interfere with a state's sovereignty and upset the balance of federalism unless Congress made its intention "unmistakably clear in the language of the statute." *Id.* The Court concluded that because of the policy-making exemption, it was not unmistakably clear that Congress intended to include state judges in the ADEA's protections. *Id.*

---

[4] Because of the identical language in Title VII and EPA, these exceptions are interpreted in the same way under both statutes. *See Bland v. New York*, 263 F. Supp. 2d 526 (E.D.N.Y. 2003).

at 467. According to the Court, "[i]t is at least ambiguous whether a state judge is an 'appointee on the policymaking level.'" *Id.* at 467. In making this statement, the Court recognized that state judges arguably make policy in fashioning and applying the common law. *Id.* at 465-66. The Court recognized that "the common law, unlike a constitution or statute, provides no definitive text; it is to be derived from the interstices of prior opinions and a well-considered judgment of what is best for the community." *Id.* The Court also noted that the policy-making exception may not require that judges actually make policy. Instead, the Court stated that it might be sufficient that a judge "is in a position requiring the exercise of discretion concerning issues of public importance," which the Court noted is the function of judges. *Id.* at 466-67. In the face of this ambiguity, the Court decided not to "attribute to Congress an intent to intrude on state sovereignty" and ruled, in the context of that case, that state judges were not protected by the ADEA. *Id.* at 470. Therefore, while the *Gregory* decision did not definitively rule that state judges fall within the policy-making exemption, it implied that such a holding was supportable based upon state judges' application of the common law.

Although the Fourth Circuit has not ruled on the scope of the policy-making exception, four other Circuit courts have ruled on this issue. In *EEOC v. Massachusetts*, 858 F.2d 52 (1st Cir. 1988), the First Circuit ruled that appointed state judges were not protected by the ADEA because they are appointees on a policy-making level. *Id.* at 53-55. The First Circuit explained:

> While judges have at times been thought to act as somewhat mechanized law-and-fact processors, scientifically applying settled principles of law to established fact patterns, that image hardly meshes with the reality of judging . . . .
>
> . . .
>
> It is . . . clear that "policymaking" is indisputably a part of the function of judging to

9

> the extent that judging involves lawmaking to fill the interstices of authority found in constitutions, statutes, and precedents (a function more predominant in appellate judging than in the performance of trial judges, who are of course, the group whose interests plaintiff EEOC seeks to protect in this litigation). Moreover, the substantive interest identified by the phrase "on the policymaking level" is closely aligned with an interest referred to by phrases such as "exercise of discretion" and "exercise of judgment," which are indisputably descriptive of most of the performance of those persons within the judicial branch who serve as judges (including trial judges).
>
> . . .
>
> This judicial type of policymaking is unlike that done in the executive and legislative branches of government. It nevertheless requires the same kind of decision-making, and the same kind of forward thinking that is required of "appointees on the policymaking level" in those other two branches of government. And it certainly concerns state government to a similar degree.

*Id.* at 54-55.

The First Circuit also found that although state judges were not specifically mentioned in the legislative history of the exception, the terms and goals of the policy-making exception apply to judges. *Id.* at 55. In discussing the ADEA's legislative history, the First Circuit noted that the legislative history to Title VII, which has identical exceptions to the definition of "employee," indicates that the exceptions to the definition of "employee" were intended to address one Senator's concern that "top decisionmakers" in all three branches of government should not be protected by the Title VII. *Id.* (citing 118 Cong. Rec. 1837 (1972)). Furthermore, the First Circuit found, based upon wording in the conference managers' report, that individuals falling within the policy-making exception need not have a close working relationship with the elected official who appointed them. *Id.* at 55-56 (citing Joint Explanatory Statement of Managers at the Conference on H.R. 1746, 92d Cong., 1st Sess., reprinted in part in 1972 U.S. Code Cong. & Admin. News 2137, 2179, 2180 (1972)("It is the intention of the conferees to exempt elected officials and members of their personal

staffs, and persons appointed by such elected officials as advisers <u>or</u> to policymaking positions at the highest levels of the departments or agencies of State or local governments, such as cabinet officers, and persons with comparable responsibilities at the local level. It is the conferees' intent that this exemption shall be construed narrowly."). Finally, the First Circuit interpreted Congress's intended "narrow construction . . . to limit the reach of the [policymaking] exception down the chain of command" and "not so much across agencies and departments." *Id.* at 56 ("the narrow construction mentioned by the conferees . . . is clearly intended to limit the reach of the exception down the chain of command, and not so much across agencies or departments.")

The Eighth Circuit also provided an analysis of the policy-making exception in *Gregory v. Ashcroft*, 898 F.2d 598, 603 (8th Cir. 1990) (*Gregory II*) (*aff'd* on other grounds in *Gregory,* 501 U.S. 452). In *Gregory II*, the Eighth Circuit ruled that appointed state judges are appointees on a policy-making level and thus exempt from the ADEA's protections. *Gregory II,* 898 F.2d at 603. The Eighth Circuit stated:

> Within the boundaries established by settled law, and mindful that it is not for the judiciary to usurp the functions of other branches of government, judges must exercise the same sort of discretion in decisionmaking, temper their rulings with the same sort of self-restraint, and engage in the same sort of thoughtful judgment that is required of "appointee[s] on the policymaking level" in the executive and legislative branches.

*Gregory II*, 898 F.2d at 601-602. The Eighth Circuit also noted that Congress likely did not intend the inconsistency of exempting all elected judges from ADEA coverage while affording appointed judges protection. *Id.* at 602. While the Supreme Court affirmed this decision on different grounds for federalism reasons, the Supreme Court did not take issue with the Eighth Circuit's analysis of the policy-making exception.

11

The Second Circuit, on the other hand, has ruled that state judges do not fall within the policy-making exception to the definition of employee. In *E.E.O.C. v. Vermont*, 904 F.2d 794 (2d Cir. 1990), the Second Circuit concluded that in order for an individual to be an appointee on the policy-making level, the individual must have been appointed by an elected official and must work closely with the appointing authority. *Id.* at 800. Because Vermont's appointed judges did not work closely with their appointing officers, the court found that Vermont's judges did not fall within the policy-making exemption. *Id.* The court based this finding on the Congressional intention that the exceptions be construed narrowly. *Id.* In *Tranello v. Frey*, 962 F.2d 244, 248-51 (2d Cir. 1992), the Second Circuit reviewed its decision in *EEOC v. Vermont* in light of the Supreme Court's decision in *Gregory* and concluded that the reasoning was still sound. *Tranello*, 962 F.2d at 249-50.

The majority of circuits that have ruled on the issue do not require individuals on a policy-making level to have a close working relationship with the elected official who appointed them and therefore find that state judges are appointees on a policy-making level. *See Gregory*, 898 F.2d 598; *EEOC v. Massachusetts*, 858 F.2d 52; *EEOC v. Bd. of Trustees of Wayne County Cmty. Coll.*, 723 F.2d 509, 511 (5th Cir. 1983) (finding that the president of a community college was excluded from the protections of the ADEA because such an individual is an appointee on a policy-making level); *see also Stitz v. City of Eureka Springs*, 9 F. Supp. 2d 1046 (W.D. Ark. 1998) (finding that a Chief of Police, who does not have a close working relationship with the elected mayor that appointed her is an appointee on a policy-making level, falling outside of Title VII's protections). The court finds the reasoning of the First and Eighth circuits to be persuasive. In the court's view, the majority rule conforms more closely to the text of the statutes as well as Title VII's legislative history. Thus, the court concludes that the policy-making exemption may apply even when there is no close working

relationship between Plaintiff and Defendant as with municipal judges and the public officials who appoint them.

In presiding over criminal domestic violence cases, Plaintiff necessarily exercised discretion in making her rulings. In addition, because much of the criminal law in South Carolina is common law and not codified in statutes,[5] Plaintiff likely would apply the common law in her position. Based upon the foregoing, the court concludes that Plaintiff is an appointee on a policy-making level and is exempt from the protections of Title VII and the EPA. As a result, Plaintiff's Title VII and EPA claims are dismissed with prejudice. This does not mean that persons in policy-making positions are without a remedy. Congress provided a remedy for many individuals exempt from the protections of Title VII and EPA in the Government Employee Rights Act (GERA).[6] In addition, persons in policy-making positions are protected by the Due Process and Equal Protection provisions of the Fourteenth Amendment of the United States Constitution.

**C.      Whether Plaintiff is Entitled to Relief Under GERA**

Plaintiff contends that even if she is exempt under Title VII and the EPA, she has a cause of action under GERA. GERA was enacted as part of the Civil Rights Act of 1991, 42 U.S.C. § 2000e-16a *et seq*. GERA states:

> The rights, protections, and remedies provided pursuant to section 2000e-16b of this title shall apply with respect to employment of any individual chosen or appointed, by a person elected to public office in any State or political subdivision of any State

---

[5]     *See State v. Elliot*, 552 S.E.2d 727, 731 (S.C. 2001) (recognizing that it is difficult to determine whether a violation of South Carolina's criminal law is a statutory or common law offense and stating that murder is a common law offense). Assault and battery of a high and aggravated nature is a common law crime. *Gay v. Ariail*, 673 S.E.2d 418, 419, n.1 (S.C. 2009). Assault is also a common law offense, *State v. LaCoste*, 553 S.E.2d 464, 476 (S.C. Ct. App. 2001), as is larceny. *State v. Parker*, 571 S.E.2d 288, 291 (S.C. 2002).

[6]     The court expresses no opinion as to whether Plaintiff is covered by the protections of GERA.

13

by the qualified voters thereof--(1) to be a member of the elected official's personal staff; (2) to serve the elected official on the policymaking level; or (3) to serve the elected official as an immediate advisor with respect to the exercise of the constitutional or legal powers of the office.

42 U.S.C. 2000e-16c. GERA was intended to "ameliorate the consequences to individuals of falling within certain of the[] exemptions" to the definition of employee in federal discrimination laws such as Title VII, the EPA and the ADEA. *See Kelley v. City of Albuquerque*, 542 F.3d 802, 808 n.4 (10th Cir. 2008). GERA specifically confers protections on individuals covered by the last three exceptions to Title VII and the EPA, but not upon the elected official him or herself. *See id.* (citing 42 U.S.C. § 2000e-16c(a); 1 Mark A. Rothstein, Charles B. Craver, Elinor P. Schroeder & Elaine W. Shoben, Employment Law § 2.5, at 177 (3d ed. 2004) (noting that the GERA "extended the coverage of the Act to all except elected officials")).

GERA permits any individual to file a complaint alleging a violation with the EEOC within 180 days after the occurrence of the alleged violation. 42 U.S.C.A. § 2000e-16c(b)(1). The contents of a GERA complaint are outlined in 29 C.F.R. § 1603.102(c). Section 1603.102(c) provides:

> A complaint shall be in writing, signed and verified. In addition, each complaint should contain the following:
>
> (1) The full name, address and telephone number of the person making the complaint;
>
> (2) The full name and address of the person, governmental entity or political subdivision against whom the complaint is made (hereinafter referred to as the respondent);
>
> (3) A clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices (See 29 CFR 1601.15(b)); and
>
> (4) A statement disclosing whether proceedings involving the alleged unlawful employment practice have been commenced before a State or local

> FEP agency charged with the enforcement of fair employment practice laws
> and, if so, the date of such commencement and the name of the agency.

*Id.*[7] Once a claim has been filed with the EEOC, the EEOC must decide whether a violation has occurred and issue a final order in accordance with the procedures set forth in the Administrative Procedure Act, 5 U.S.C. §§ 554-57. 2 U.S.C. § 1220(b)(1). *See Guy v. Illinois*, 958 F. Supp. 1300 (N.D. Ill. 1997). After a final order is issued from the EEOC, any party aggrieved by the EEOC's order may seek judicial review in the federal Circuit courts. 42 U.S.C. § 2000e-16c(c).

In this case, Plaintiff's charge of discrimination filed with the EEOC was not treated as a GERA claim and a final order was not issued. Instead, the EEOC issued Plaintiff a right to sue letter indicating that her claim under Title VII and EPA was dismissed because Plaintiff was an independent contractor and not an employee. Entry 1-1. Plaintiff's remedy is to follow the precise

---

[7] Title VII complaints have the same requirements as GERA complaints except that the party against whom the complaint is made is different. 29 C.F.R. 1601.12 provides:

(a) Each charge should contain the following:

> (1) The full name, address and telephone number of the person making the charge except as provided in §1601.7;
>
> (2) The full name and address of the person against whom the charge is made, if known (hereinafter referred to as the respondent);
>
> (3) A clear and concise statement of the facts, including pertinent dates, constituting the alleged unlawful employment practices: See §1601.15(b);
>
> (4) If known, the approximate number of employees of the respondent employer or the approximate number of members of the respondent labor organization, as the case may be; and
>
> (5) A statement disclosing whether proceedings involving the alleged unlawful employment practice have been commenced before a State or local agency charged with the enforcement of fair employment practice laws and, if so, the date of such commencement and the name of the agency.

In addition, under GERA judicial review of the EEOC's order is by the federal circuit court while under Title VII review of EEOC orders is by the federal district court. See 42 U.S.C. § 2000e-16c(c); 42 U.S.C. § 2000e-16(c).

procedures for GERA complaints. [8]

E. **Plaintiff's § 1983 Cause of Action**

In her fifth cause of action, Plaintiff brought a claim pursuant to 42 U.S.C. § 1983 denominated "intentional discrimination under color of state law" and referenced pay inequities, discharge, and deprivations of employment opportunities on account of race. Specifically, paragraph 39 of the complaint states:

> By the acts and practices alleged above, and by other and related acts and practices, state actor Defendant has deprived Plaintiff of equal employment opportunities guaranteed by law, by intentionally discriminating against her with respect to the terms, conditions and privileges of her employment; including paying her less than similarly situated Caucasian male municipal judges, treating her less favorably and discharging her on account of her race and sex, by depriving her of her employment opportunities on account of her race; all under color of state law in violation of 42 U.S.C. § 1983 of the Civil Rights Act of 1871.

Entry 1, ¶ 39. At the hearing on summary judgment before the Magistrate Judge on March 19, 2009,

---

[8] It is not clear from the record whether Plaintiff filed her claim with sufficient specificity to invoke GERA. Plaintiff requests that the court equitably toll the running of the statute of limitations on her GERA claim, equitably estop the EEOC from asserting a time bar, and allow Plaintiff to pursue her statutorily provided remedies through the EEOC administrative process.

The Fourth Circuit has recognized that the filing of a timely charge of discrimination is subject to equitable tolling. *Vogel v. American Home Prod. Corp. Severance Pay Plan*, 122 F.3d 1065 (Table), 1997 WL 577578, at *2 (4th Cir. 1997). "[E]quitable tolling is available only in 'those rare instances where-due to circumstances external to the party's own conduct-it would be unconscionable to enforce the limitation period against the party and gross injustice would result.'" Spencer v. Sutton, 239 F.3d 626, 630 (4th Cir. 2001)(quoting *Harris v. Hutchinson*, 209 F.3d 325, 330 (4th Cir. 2000)). The court is without jurisdiction to order the EEOC to hear the case and therefore the court declines to equitably toll the running of the statute of limitations on Plaintiff's GERA claim. *See Guy v. Illinois*, 958 F. Supp. 1300, 1306 (N.D. Ill. 1997)(declining to order the EEOC to hear a GERA claim and stating that such an argument should be addressed to the EEOC because the court did not have jurisdiction over the GERA claim prior to administrative handling of the claim).

Plaintiff should raise her statute of limitations argument with the EEOC. EEOC regulation 29 C.F.R. § 1603.102(e) states: "A charge filed pursuant to 29 CFR part 1601 or part 1626, that is later deemed to be a matter under this part [GERA], shall be processed as a complaint under this part and shall related back to the date of the initial charge or complaint."

Defendant contended that Plaintiff did not identify any federal law or constitutional right upon which she premised her § 1983 claim, and that Plaintiff's fifth cause of action therefore must be dismissed. Plaintiff argued at the hearing that the alleged violations of § 1983 were premised upon violations of her First Amendment Rights. Entry 70-28 at 21. After the hearing, Plaintiff made a motion to amend her complaint to allege First Amendment violations. However, the Magistrate Judge denied Plaintiff's motion as untimely pursuant to Federal Rule of Civil Procedure 16. *See* Entries 86, 104 and 106.

In his Report and Recommendation, the Magistrate Judge concluded that the basis of Plaintiff's § 1983 claim was uncertain and that Plaintiff's failure to make the basis of her § 1983 claim clear prevented a grant of summary judgment. The Magistrate Judge also noted that this cause of action likely could have been dispensed with through a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). However, the court held in abeyance a ruling on this issue until it was determined whether Plaintiff, as a municipal judge, qualified as an employee under Title VII and the EPA.

At the hearing before this court on March 16, 2010, Defendant suggested that Plaintiff should have brought a claim for violations of the Fourteenth Amendment as opposed to Title VII and the EPA. In response, Plaintiff argued that ¶ 39 of the complaint alleged a violation of the Equal Protection Clause of the Fourteenth Amendment. The court disagrees.

Under the Federal Rules of Civil Procedure, "[n]otice pleading rests on the principle that the defendant should have 'fair notice of what [a] plaintiff's claim is and the grounds upon which it rests.'" *Barclay White Skanska, Inc. v. Battelle Mem'l Inst.*, 262 F. App'x 556, 560 (4th Cir. 2008) (citing *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). Federal Rule of Civil Procedure 8 requires that

pleadings be "construed so as to do justice." Fed. R. Civ. P. 8(e). "Rule 8 requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests. *Barclay White*, 262 F. App'x at 560 (internal citations and quotations omitted).

Section 1983 is the vehicle by which individuals make legal claims for violations of their federal rights. *See Kendall v. City of Chesapeake*, 174 F.3d 437, 440 (4th Cir. 1999). Although ¶ 39 alleges discrimination based upon race and sex, it does not identify the Fourteenth Amendment as the basis for Plaintiff's section 1983 claim. Without an indication that the Fourteenth Amendment is the basis for Plaintiff's section 1983 claim, ¶ 39 could be read as an alternative method of pleading Plaintiff's Title VII and EPA claims. Moreover, even if ¶ 39 did notify Defendant of a possible claim under the Fourteenth Amendment, Plaintiff later claimed that her § 1983 claim was premised upon First Amendment violations, negating any notice of a Fourteenth Amendment claim. Plaintiff's § 1983 claim is dismissed with prejudice.

### F.     Plaintiff's § 1981 Cause of Action

Like Plaintiff's § 1983 claim, Plaintiff's cause of action under § 1981 was addressed in the Magistrate Judge's Report and Recommendation, but a ruling on the merits of this issue was held in abeyance until it was determined whether Plaintiff, as a municipal judge, qualified as an employee under Title VII and the EPA. The Magistrate Judge recommended that this cause of action be dismissed because there is no private right of action under § 1981.

In *Jett v. Dallas Independent School Dist.*, 491 U.S. 701 (1989) the Court held, "the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for violation of the rights guaranteed in § 1981 by state governmental units. . . ." *Id.* at 771. Although other

holdings from *Jett* were abrogated by the Civil Rights Act of 1991, the Court's ruling with regard to the exclusivity of § 1983 causes of action remains in effect. *See Dennis v. County of Fairfax*, 55 F.3d 151, 156, n. 1 (4th Cir. 1995) (As to the ruling that §1983 is the exclusive remedy against a governmental actor for violations of § 1981, "we do not believe this aspect of *Jett* was affected by the Civil Rights Act. of 1991."). Therefore, Plaintiff has not stated a cause of action under § 1981 and any claims pursuant to this statute are dismissed with prejudice.

**IV.     South Carolina Payment of Wages Act Claim**

A ruling on Plaintiff's cause of action under the South Carolina Payment of Wages Act ("Payment of Wages Act") was also held in abeyance until Plaintiff's status as an employee was determined. Defendant argued that it should be granted summary judgment on Plaintiff's cause of action under the South Carolina Payment of Wages Act because Plaintiff received all wages owed to her. Plaintiff failed to respond to this argument. In Defendant's response to the court's September 29, 2009 order, Defendant argues that Plaintiff abandoned this claim by failing to respond to its motion for summary judgment. Plaintiff responds that the court already denied summary judgment on this issue and that Plaintiff limited her current briefs to the specific issue raised by the court. The court did not rule on this claim in its September 29, 2009 order. The court declined to adopt the Report and Recommendation of the Magistrate Judge. In addition, the court denied Defendant's motion for summary judgment, as well as Plaintiff's motion for partial summary judgment. The court held in abeyance a determination on the merits until a decision was issued on wither Plaintiff, as a public officer, is an employee.

The party seeking summary judgment has the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

"When a motion for summary judgment is made and supported as provided in [Fed. R. Civ. P., Rule 56(e)], an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in [Rule 56] must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). *See Shealy v. Winston*, 929 F.2d 1009, 1012 (4th Cir.1991); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986). Plaintiff failed to provide evidence demonstrating that a genuine issue of material fact remains as to her South Carolina Payment of Wages Act Claim. The court finds that Plaintiff abandoned this claim and grants Defendant summary judgment on this claim.

### III. CONCLUSION

The court **grants** Defendant's motion for summary judgment with regard to Plaintiff's South Carolina Payment of Wages Act Claim. For the reasons stated herein above, all of Plaintiff's remaining causes of action are dismissed with prejudice.

**IT IS SO ORDERED.**

s/ Margaret B. Seymour<br>
The Honorable Margaret B. Seymour<br>
United States District Judge

August 13, 2010
Columbia, South Carolina